**FILED**

**February 27, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 3:30 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | | |
|---|---|---|
| JASON WRIGHT, | ) | Docket No.: 2016-04-0202 |
| Employee, | ) | |
| v. | ) | State File No.: 38476-2016 |
| | ) | |
| R & D ENTERPRISES OF TN. | ) | Judge Robert Durham |
| d/b/a MR. TRANSMISSION | ) | |
| Employer. | ) | |

## EXPEDITED HEARING ORDER DENYING BENEFITS

This cause came before the undersigned Workers' Compensation Judge on February 17, 2017, upon the Request for Expedited Hearing (REH) filed by Mr. Wright. The central legal issue is whether Mr. Wright sustained a work-related injury on May 23, 2016, entitling him to workers' compensation benefits. The Court holds that Mr. Wright is unlikely to prevail at trial in establishing that his injury was not idiopathic in nature.

### History of Claim

Mr. Wright testified that on May 23, 2016, he was working at Mr. Transmission in Cookeville when he began the process of hooking up a machine to flush the transmission line on a car that was on a lift. As he began the task, he felt fine with no symptoms at all. He remembers being under the car and picking up an electric cord to plug into a wall outlet. He had unhooked a sway bar on the car, and had to take a step toward the front tire to avoid the bar and get out from under the car. The next thing he remembered is being on the ground with his co-worker, Casey Morgan, standing over him. Mr. Wright admitted he did not remember why he fell to the floor.

Mr. Morgan, the only witness to the fall, testified that he had his back turned while Mr. Wright was under the vehicle. He heard a "thump" that sounded like a basketball hitting someone in the head. When he turned around, he saw Mr. Wright staggering and then collapsing to the floor, apparently unconscious.

1

Mr. Wright testified that when he came to, he sat down to rest and noticed his vision was blurry. He then became emotional and burst into tears. Gary Cravens, the owner, arrived and decided to take Mr. Wright to the emergency room because Mr. Wright was crying and incoherent, stating something "was not right."

At the emergency room, Mr. Wright continued to act confused and had difficulty concentrating, blurred vision, nausea, and a severe headache. According to his wife, he told the admitting nurse he weighed one-hundred twenty pounds when he actually weighs around one-hundred seventy. However, there is nothing in the records indicating Mr. Wright exhibited any cuts, bruising, or other contusions to his head. Furthermore, no one testified to observing any marks on Mr. Wright's head that would denote an injury.

Mr. Wright told the hospital staff that he had been evaluated for head concussions on two previous occasions, but he did not remember if he hit his head this time or just fell to the ground "for no reason at all." (Ex. 6 at 6.) The hospital admitted him overnight due to his episode of unexplained syncope and ran a variety of tests, including a CT brain scan, a heart monitor and comprehensive blood work. None of the tests showed any abnormalities other than possible hypertension. The hospital discharged him the next day. (Ex. 6.)

Mr. Wright testified that he and Mr. Cravens agreed he should take a few days off work to recover. On Memorial Day, he again became emotional without apparent justification. As a result, he saw his family medical provider, Greg Hargis, N.P. He told N.P. Hargis "he passed out" at work and suffered headaches, dizziness and memory difficulties since. N.P. Hargis ordered a brain MRI that was normal. N.P. Hargis then referred Mr. Wright to Dr. Thuy Ngo, a neurologist, due to his "recent syncope with vertigo" and took him off work. (*Id.* at 21, 23, 26.)

Dr. Ngo saw Mr. Wright on June 21. Mr. Wright told Dr. Ngo that he had not been able to work since the incident, although he was only suffering mild memory loss and minimal vertigo at that point. The record notes Mr. Wright had suffered from chronic and recurrent headaches over the last several years, with Ms. Wright stating he went through a box of Goody Headache Powders each week. (Ex. 6 at 27.) At the hearing, Ms. Wright testified she had exaggerated Mr. Wright's headaches to Dr. Ngo. Dr. Ngo also noted Mr. Wright's mother suffered from migraine headaches.

Dr. Ngo observed that Mr. Wright's condition was "suggestive of a possible closed head injury with brief post-concussive syndrome" as well as "probable familial migraines." He stated Mr. Wright could return to work from a neurological standpoint. (*Id.* at 28.) N.P. Hargis released Mr. Wright to return to work on June 27. (*Id.* at 29.) Mr. Wright testified he is back at work and fully recovered from the incident with no need for additional medical treatment.

2

At the hearing, Mr. Wright testified he received medical treatment twice in the past for concussions, although he did not provide any medical records regarding this treatment. He also believed he might have suffered concussions on four other occasions for which he did not receive treatment. He stated that each time his symptoms were similar to the symptoms he had following the May 23 incident; i.e., blurred vision, memory loss, confusion, headaches and unexplained crying. His wife corroborated this testimony for the incidents that occurred during their marriage, and Mr. Cravens testified he witnessed Mr. Wright experience similar symptoms following an episode where Mr. Wright allegedly sustained a concussion.

**Findings of Fact and Conclusions of Law**

As in all workers' compensation actions, Mr. Wright, as the claimant, has the burden of proof on the essential elements of his claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, he only has to come forward with sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits in order to meet his burden. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

In order to establish causation, an employee must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2016). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2016). Thus, causation must be established by expert medical testimony, and it must be more than "speculation or possibility" on the part of the doctor. *Id.* In this matter, the Court finds Mr. Wright's evidence is not likely to establish causation at a compensation hearing, and his injury may be described as idiopathic in nature..

"An idiopathic injury is one that has an unexplained origin or cause, and generally does not arise out of the employment unless some condition of the employment presents a peculiar or additional hazard." *McCaffery v. Cardinal Logistics,* 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at *9 (Dec. 10, 2015) (citations omitted). An idiopathic injury is only compensable if the "accident originated in the hazards to which the employee was exposed as a result of performing his job duties." *Id.* at *10.

The Court finds Mr. Wright to be a candid and forthright witness and does not doubt his credibility. However, the fact remains his testimony established that he does not know why he fell, and there were no witnesses that saw him strike his head or encounter any hazard that caused him to fall. Mr. Morgan heard a "thump" that sounded like a basketball hitting a face, but that is the extent of his proof; he did not even testify as

3

to where the sound emanated, much less that it was Mr. Wright striking his head. Mr. Wright did not have any marks on his head denoting a collision, and the CT brain scan at the hospital did not reveal any abnormalities.

Mr. Wright made a valiant effort to meet his burden of proof through his movements just before he lost his memory, Mr. Morgan's "thump," and the fact that his symptoms following the event were similar to symptoms he had suffered in the past when diagnosed with a concussion. However, the Court finds this circumstantial evidence insufficient to establish the causal link necessary to render the incident compensable. Furthermore, Dr. Ngo, a neurologist who was well aware of Mr. Wright's asserted history, could only state that his history was "suggestive of possible closed head injury with brief post-concussive syndrome." This falls well short of the "reasonable degree of medical certainty" required of physicians to establish causation. Tenn. Code Ann. 50-6-102(14)(C) (2016)..

Therefore, the Court holds at this time that Mr. Wright is unlikely to prevail at a hearing on the merits in proving that he sustained an injury on May 23, 2016, arising primarily out of and in the course and scope of his employment. *Id.*

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Wright's request for workers' compensation benefits is denied at this time.

2. This matter is set for a Scheduling Hearing/Status Conference on April 10, 2017, at 1:00 p.m. C.T. The parties must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Hearing._ Failure to call in may result in a determination of the issues without your further participation.

**ENTERED THIS THE 27**TH **DAY OF FEBRUARY 2017.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

4

# APPENDIX

<u>Exhibits:</u>

1.  Affidavit of Jason Wright
2.  Wage Statement
3.  Notice of Denial
4.  Job Description
5.  Medical records of Priority Care
6.  Medical records of Cookeville Regional Medical Center and Dr. Thuy Ngo

<u>Technical Record:</u>

1.  Petition for Benefit Determination
2.  Dispute Certification Notice
3.  Request for Expedited Hearing
4.  Motion to Allow Telephonic Appearance
5.  Order Granting Motion to Allow Telephonic Appearance
6.  Employer's Pre-Hearing Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on this the 27th day of February 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Jason Wright | | | X | Yankeesfan38568@yahoo.com |
| Cole Stinson | | | X | Cole.stinson@accident.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

5